IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LAWRENCE KING,           )
                             )
           **Plaintiff,**      )      **Civil Action No. 1:19-cv-318-SPB**
        **v.**           )
                             )
**WILLIAM BENNAGE-GREGORY,**  )
*et al.,*                         )
                             )
          **Defendants.**   )

## <u>MEMORANDUM OPINION</u>

Plaintiff Lawrence King, a former state inmate, filed this civil rights action seeking redress for the alleged violation of his Eighth Amendment rights relative to his confinement at SCI-Albion. The essence of Plaintiff's claim is that he was unlawfully detained at SCI-Albion for three-hundred eighteen (318) days beyond the date of his maximum sentence. During the period of his allegedly unlawful confinement, he sustained serious personal injuries after falling out of his bunk. The named Defendants in this lawsuit are a "John Doe" employee of the Pennsylvania Board of Probation and Parole as well as four employees of the Pennsylvania Department of Corrections ("DOC") -- i.e, Records Administrator William Bennage-Gregory, Records Administrator Jessica Welch, Records Administrator "Stone," and Records Specialist Tony Stair. Plaintiff has sued each of these Defendants in his/her individual capacity only.

Pending before the Court is a motion by Defendants Bennage-Gregory, Welch, Stone, and Stair (the "DOC Defendants") to dismiss the complaint. For the reasons that follow, the motion will be granted in part and denied in part without prejudice.

1

## I.  Factual Background

On February 4, 2013, Plaintiff was incarcerated at SCI-Albion to begin serving a sentence of 18 to 60 months as ordered by the Erie County Court of Common Pleas at docket number CP-25-CR-001147-2012 (the "2012 case").  Compl. ¶11.  After granting Plaintiff credit for presentencing time served, the Pennsylvania DOC calculated his maximum sentence date as January 31, 2018.  Id. ¶12.

On March 10, 2016, Plaintiff was paroled by the Pennsylvania Board of Probation and Parole ("Parole Board") after serving thirty-seven (37) of his sixty (60) month maximum sentence.  Compl. ¶13.  Plaintiff later committed a technical parole violation, which resulted in him being placed in custody at a parole violation center from July 4, 2016 to September 2, 2016, when he was re-paroled. Id. ¶¶14-15.

At some point after being re-paroled, Plaintiff committed a second technical parole violation.  Compl. ¶¶15, 17.  He returned to a parole violation center and remained in custody there from April 30, 2017 to July 6, 2017.  Id. ¶17.

After being re-released from custody on July 6, 2017, Plaintiff remained free on parole until January 23, 2018 -- a period of 201 days.  On January 23, 2018, he was charged with flight from apprehension at docket number CP-25-CR-0000405-2018 (the "2018 case") and placed in the Erie County Prison.  Compl. ¶19.  Plaintiff remained incarcerated at the Erie County Prison until February 13, 2018, when he "maxed out" his sentence in the 2012 case.  Id. ¶21.  Because Plaintiff had served his maximum sentence on the 2012 case, he was entitled to post bail on the 2018 case.  Plaintiff did so and was released from the Erie County Prison that same day (February 13, 2018).  Id. ¶22.

2

Plaintiff subsequently pled guilty to his new charge of flight from apprehension in the 2018 case and was returned to SCI-Albion on May 15, 2018.  Compl. ¶23.  Two weeks later, on May 29, 2018, Erie County Common Pleas Judge Daniel Brabender sentenced Plaintiff to serve one (1) to six (6) months' imprisonment in the 2018 case, "concurrent with 'any sentence [Plaintiff was] currently serving.'"  Id. ¶24.

On December 5, 2018, the Parole Board notified Plaintiff that his street time credit in the 2012 case was being revoked as a result of his new criminal charges.  Compl. ¶25.  The Board's "order to recommit" indicated that Plaintiff owed 551 days of backtime,[1] but it did not specify how that amount of time had been calculated.  Id. ¶26.  Believing the calculation to be erroneous, Plaintiff submitted an administrative remedies form to the Parole Board on December 29, 2018.  Therein, Plaintiff asserted that he was not receiving the backtime credit to which he was entitled and asked that the error be corrected.  Compl. ¶36.  He received no response to this request.  Id. ¶37.

On January 9, 2019, Plaintiff received "Version 3" of a DOC "Sentence Status Summary" form known as a "DC-16(E)."  Compl. ¶31 and n. 4.  This document was allegedly completed and/or approved by records administrators Bennage-Gregory and Welch.  Id. ¶¶100, 105.  Version 3 of the DC-16(E) form established May 27, 2020 as Plaintiff's new maximum sentence date and also indicated that Plaintiff returned to SCI-Albion to begin serving his 2012 parole violation sentence on November 23, 2018.  Id. ¶¶31-32.  Believing this information to be inaccurate, both Plaintiff and his mother undertook efforts to have the perceived mistakes corrected.

---

[1] "Backtime" is "[t]he unserved part of a prison sentence which a convict would have been compelled to serve if the convict had not been paroled." 37 Pa. Code § 61.1.

On June 6, 2019, Plaintiff sent a second letter to the Parole Board explaining that he had

previously submitted an administrative remedies form to which no one had responded.  Compl.

¶38.  Plaintiff's mother separately wrote to the DOC's central office with the request:

> [p]lease investigate and contact me regarding the detainment of the above
> referenced inmate. He served time at Gateway Rehabilitation Center... from 4-30-
> 17 to 7-8-17 which time has not been credited as time served toward his release
> date…. The inmate, Lawrence King, did file an administrative remedy form in a
> timely fashion (before 1-2019) and did not receive an answer. He then did send a
> certified copy of pertinent documents again in May of 2019: he still has not
> received a reply…. I look forward to you remedying this oversight and applying
> these days as time served with communication of same to myself, Lawrence King,
> and the administrative staff of [SCI Albion], his current location and home prison.

Id. ¶39.

Defendant Stair, a Records Specialist at the DOC's office is Mechanicsburg,

Pennsylvania, responded by way of a memo dated June 18, 2019.  It stated:

> The Department of Corrections is in receipt of your correspondence regarding the
> number of days given on your backtime. Backtime, as well as everything else on
> the PBPP-39 is computed by the Pennsylvania Board of Probation and Parole. If
> there is something that you do not agree with, you must write directly to the
> parole board. You can reach them at the address below: Pennsylvania Board of
> Probation and Parole, 1101 South Front Street, Harrisburg, PA 17104-2519. I
> trust that this answers all other questions you may have regarding this matter.

Compl. ¶40.

Plaintiff also raised complaints with the staff at SCI-Albion about the DOC's perceived

error in failing to run his sentence in the 2018 case concurrently with his 551-day sentence as a

convicted parole violator in the 2012 case.  On June 17, 2019, Plaintiff submitted an "Inmate's

Request to Staff Member," stating:

> I have enclosed a copy of my sentencing order, a copy of my DC-16E status
> summary Department of Corrections, and a copy of my order to recommit
> Commonwealth of Pennsylvania Board of Probation and Parole. My sentencing
> order says in linked sentences: Link CP-25-00405-2018… confinement is
> concurrent with unknown - to any sentence currently serving. On my DC-16E is
> [sic] shows my reception date is 5/15/2018. It shows in my sentencing order I was

> sentenced May 29, 2018. In my order to recommit it shows in Custody for Return: 11/23/2018, and my maximum date is 05/27/2020. From May 29, 2018 - November 23, 2018 is 173 days, which proves the sentencing order was not followed by order to be served concurrent, but has been changed to consecutive. I am sending all these copies to you so that you will fix the mistake, and follow Judge Daniel J. Brabender Jr.'s sentencing order…. I am making a copy of this request so if I have to take further judicial steps, I will have proof that I made you aware of this matter. By rule in the Pennsylvania Department of Corrections, Inmate Handbook page 411. Daily Operations. Requests Slips. You have five working days to respond.

Compl. ¶42. A staff member (not identified in the complaint) responded on July 1, 2019: "Since it is listed as a reason for recommit, it'll be added as a re-entry detainer. As seen on your 16-E as updated by CSCU, I'll send you a free copy." Id. ¶43.

Believing this response to be inadequate, Plaintiff followed up with another "Inmate Request to Staff Member" the next day, inquiring: "So once my DE-16E is updated, my max out date will get corrected and the sentencing order which is enclosed will get followed as ordered?" Compl. ¶44. Defendant Stone, a records administrator at SCI-Albion, responded to Plaintiff's inquiry on July 19, 2019, stating:

> After further review of attached documents, it appears that the county sentence that was used as the reason for recomit has been satisfied. Therefore the DC-16E dated 1/9/19 is the most recent. You will not be required to re-enter to a new inmate #. The PV max on your current DC-16E is correct. Any further questions regarding your max should be directed to your institutional parole agent.

Id. ¶45.

Plaintiff avers that Defendant Stone's response of July 19, 2019 was inaccurate in that the January 9, 2019 DC-16E improperly stated that he did not begin serving his sentence at SCI Albion until November 23, 2018; in fact, Plaintiff insists, he had been incarcerated at that facility on concurrent sentences since May 15, 2018. Compl. ¶¶46-47. Consequently, Plaintiff submitted another Inmate Request to Staff Member on September 26, 2019, directed to Stone. The request stated:

5

> My mother, Maria King called and contacted you. She told me you said for me to write you. I have enclosed a copy of my sentencing order for [the 2018 case] [and] a copy of the DC-16E sentence status summary Department of Corrections. My sentence for [the 2018 case] is dated May 29, 2018.  I was sentenced [to] 1-6 months… concurrent with unknown - to any sentence currently serving. It shows I was given 7 days credit, so the 173 days owed were to be ran [sic] concurrent. In the DC-16E it shows custody for return - PV 11/23/2018. I was sentenced on May 29, 2018. From May 29, 2018 until 11/23/2018 is exactly 173 days, which shows that the sentencing order… was not followed as order[ed]….

Compl. ¶49 (final alteration in the original).

On September 30, 2019, Defendant Stone responded:  "I agree that the [2018 case] is concurrent, but according to the board action dated 12-5-18, you paroled from [the 2018 case] on 11/23/18. That sentence has nothing to do with your current backtime or min and max dates. If you have questions regarding your min and max, please contact your institutional parole agent." Compl. ¶50.  Plaintiff avers that Stone's response was "clearly wrong" in suggesting that he had been paroled on his 2018 case on November 23, 2018.  Rather, Plaintiff alleges that his maximum six (6) month sentence in the 2018 case *expired* on November 23, 2018.  *See* Compl. ¶52.  Plaintiff further claims that, "because his sentences were ordered to be run concurrently, Defendant Stone should have understood that [Plaintiff's] current term of incarceration [i.e., the revoked street time in the 2012 case] was being served when Mr. King was returned to SCI Albion on May 15, 2018." Id. ¶53.

On October 16, 2019, Plaintiff was taken out of his cell and handed a parole board decision dated October 9, 2019, which stated the following:

> As recorded on October 9, 2019, the Board of Probation and Parole rendered the following decision in your case: Modify board actions of 12/05/2018, 5/17/2019, and 05/30/2019, due to review of information, and now: Close case at institution number KX1059 effective 10/9/2019.

Compl. ¶67.  The Parole Board's decision did not specify what "modifications" were made to its prior actions, nor did it indicate what Plaintiff's new maximum sentence date was, relative to his

6

parole violations in the 2012 case, based on the Board's "modifications."  Id. ¶68.  Instead, the October 9, 2019 decision merely indicated that Plaintiff's case was "closed" effective that same day.  Id. ¶69.

Despite the Parole Board having closed his case on October 9, 2019, Plaintiff was not notified of the decision until October 16, 2019.  Compl. ¶70.  On that day, Plaintiff was summoned to the parole office and informed that he was being released.  Id. ¶71.

Unfortunately, in the interim Plaintiff sustained a severe head injury on September 4, 2019, after allegedly falling out of his bunk.  Compl. ¶¶72-80.[2]  The injury required Plaintiff to undergo brain surgery to correct a hematoma and has otherwise resulted in severe and permanent sequelae.  Id. ¶¶80-85.

## II. Procedural Background

Plaintiff commenced this lawsuit on October 31, 2019, asserting a single claim under 42 U.S.C. §1983 for the alleged violation of his Eighth Amendment rights.  In his complaint, Plaintiff claims that the latest date on which his sentence in the 2012 could have run was December 2, 2018; however, he was not released from prison until October 16, 2019.  Compl. ¶56.  Plaintiff thus avers that he was unlawfully incarcerated for three-hundred eighteen (318) days after his sentence had expired.  Id. ¶57.  Plaintiff further posits that he "would not have been on the top bunk in SCI Albion, nor would he have fallen and injured himself in the cell, had he been released after his maximum sentence was completed on December 2, 2018."  Id. ¶81.

The DOC Defendants filed their pending motion to dismiss and supporting brief on January 6, 2020.  ECF Nos. 11, 12.  In their motion, the DOC Defendants contend that: (i)

---

[2] Plaintiff avers that he was pressured by prison staff to blame his injuries on an attack by his cellmate.  Compl. ¶86.  He claims that, after refusing to do so, he was placed in the restrictive housing unit.  Id. ¶87.

Plaintiff's §1983 claims are barred by the holding of *Heck v. Humphrey,* 512 U.S. 477 (1994), and (ii) the complaint otherwise fails to state a cognizable Eighth Amendment violation.

Plaintiff filed his brief in opposition to the motion on January 27, 2020, ECF No. 13, and the DOC Defendants replied on January 30, 2020, ECF No. 14.  The issues are now sufficiently joined and the motion to dismiss is ripe for adjudication.

**III**.  **Standard of Review**

Defendants' motion is brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the ground that the Complaint fails to state a claim upon which relief can be granted. "When considering a Rule 12(b)(6) motion, we accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Wayne Land & Mineral Grp. LLC v. Delaware River Basin Comm'n*, 894 F.3d 509, 526–27 (3d Cir. 2018) (internal quotation marks and citations omitted).  In order to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." Id.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

**III**.  **Discussion**

Plaintiff's sole cause of action is a claim against all Defendants under 42 U.S.C. §1983. In order to establish a valid §1983 claim, a plaintiff must show that the defendant, while acting

under color of state law, violated one or more of the plaintiff's federal constitutional or statutory rights. *See West v. Atkins*, 487 U.S. 42, 48 (1988).  In order to hold any defendant liable in his or her individual capacity, a plaintiff must show that the defendant was personally involved in the alleged wrongdoing.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

In this case, the DOC Defendants do not dispute that the Complaint adequately alleges action taken under color of state law.  The only question is whether Plaintiff has pled an actionable violation of his constitutional rights -- specifically, his Eighth Amendment right to be free from "cruel and unusual punishment."  U.S. Const. amend. VIII.

In moving to dismiss the complaint, the DOC Defendants argue that Plaintiff's §1983 claims are procedurally barred by the holding of *Heck v. Humphrey*, 512 U.S. 477 (1994) and that the complaint otherwise fails to state a plausible constitutional violation.  We address each basis for dismissal in turn.

A. *Is Plaintiff's Claim Barred by Heck vs. Humphrey*?

Under the rule established in *Heck v. Humphrey,* a plaintiff cannot "recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," unless the plaintiff first makes a threshold showing that there has been a "favorable termination" of his prior proceedings by demonstrating that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486–87. The purpose of this rule is, in part, "to avoid[ ] parallel litigation over the issues of probable cause and guilt, prevent the creation of two conflicting resolutions arising out of the same or identical transaction, and preclude a convicted criminal defendant [from making a] . . . collateral

9

attack on the conviction through the vehicle of a civil suit." *Royal v. Durison*, 254 F. App'x. 163, 165 (3d Cir. 2007) (internal quotation marks and citations omitted; alterations and ellipsis in the original).

The "favorable termination rule" of *Heck* applies in the context of Eighth Amendment claims involving allegations that the plaintiff was confined unlawfully beyond his statutory maximum sentence. *See Wilkinson v. Dotson,* 544 U.S. 74, 82 (2005) (a state prisoner's §1983 claim is barred, regardless of the target of the lawsuit, if success in the §1983 action "would necessarily demonstrate the invalidity of confinement or its duration.'"); *Gause v. Haile,* 559 F. App'x 196, 198-99 (3d Cir. 2014) (affirming dismissal of plaintiff's Eighth Amendment claim where "a ruling that [the plaintiff] was held in excess of the maximum sentence would necessarily imply the invalidity of his 'confinement or its duration,' and would therefore violate *Heck*"); *Royal,* 254 F. App'x at 165 (affirming summary judgment in favor of county officials on plaintiff's Eighth Amendment claim and explaining "[w]ere we to hold that the Commonwealth of Pennsylvania did, in fact, incarcerate Royal beyond the statutory maximum, we would necessarily be holding that the 'Confinement or its duration' was invalid in violation of the favorable termination requirement announced in *Heck*").

Plaintiff does not contend otherwise.  Instead, Plaintiff maintains that he achieved a "favorable termination" of his confinement when the Parole Board issued its order on October 9, 2019 "modifying" its prior calculations in unspecified respects, and immediately closing his case.  At this early stage of the proceedings, Plaintiff's theory is at least plausible; consequently, the Court cannot say, as a matter of law, that *Heck* bars Plaintiff's §1983 claim.

Under the Prison and Parole Code and related regulations, Plaintiff was entitled to administratively appeal the December 5, 2018 Order to Recommit within thirty days of its

10

mailing. See 61 Pa. C.S. § 6113(d); 37 Pa. Code § 73.1(a); *Lawrence v. Pa. Bd. of Probation and Parole*, 145 A.3d 799, 803 (Pa. Cmwlth. Ct. 2016).  Plaintiff claims that he did so in this case. See Compl. ¶36 (alleging that, "[o]n December 29, 2018 Mr. King submitted an administrative remedies form to the Parole Board, explaining that he was not receiving the back time that he was entitled [to], and asking that the mistake be corrected").  The Parole Board had the authority to correct any mistakes in the prior Recommitment Order and thereby invalidate any aspects of the order that were unlawful.  See 61 Pa. C.S.A. §6113(d)("The three board members deciding the appeal may affirm, reverse or remand the decision of the panel or may order the matter be heard de novo.").  Plaintiff alleges, however, that he never received a formal ruling, or any response, from the Board until it issued its "decision" on October 9, 2019, "modifying" its prior "actions" and summarily closing his case.  Compl. ¶¶37-39, 41, 67-69.  Many questions remain at this point in the proceedings concerning the basis and nature of the Board's October 9, 2019 "decision."  The Court does not have the Parole Board's administrative record before it, and it is not entirely clear what prior "actions" the Parole Board took on December 5, 2018, May 17, 2019 or May 30, 2019 -- or in what way those "actions" were "modified" on October 9, 2019 -- apart from the limited facts set forth in the complaint.  Discovery will likely shed more light on the exact nature of the Board's October 9, 2018 ruling and the extent (if at all) to which it can be considered a "favorable termination" of Plaintiff's revocation proceedings in the 2012 case. Accordingly, the Court will not dismiss Plaintiff's claims at this time based upon *Heck's* procedural bar; however, this aspect of Defendants' motion will be denied without prejudice to Defendants' right to raise this argument at a later stage of these proceedings, should future circumstances so warrant.

11

B. *Does the Complaint Fail to Allege a Plausible Eighth Amendment Violation?*

The next question is whether Plaintiff has plausibly alleged a violation of his Eighth Amendment rights. The U.S. Court of Appeals for the Third Circuit has determined that an inmate's continued detention after his term of imprisonment has expired "can, under certain circumstances, constitute cruel and unusual punishment, in violation of the Eighth Amendment." *Wharton v. Danberg*, 854 F.3d 234, 241 (3d Cir. 2017) (citing *Montanez v. Thompson*, 603 F.3d 243, 250 (3d Cir. 2010)). To establish a constitutional violation in this context, a plaintiff prisoner must show that:

> "(1) a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted; (2) the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight; and (3) a causal connection between the official's response to the problem and the unjustified detention."

*Id*. (quoting *Montanez*, 603 F.3d at 252). To determine whether a prison official acted with deliberate indifference, courts in this circuit look to "'the scope of the official's duties and the rule the official played in the life of the prison.'" *Andrew v. Buskirk*, 775 F. App'x 737, 742 (2019) (quoting *Montanez v. Thompson*, 603 F.3d 243, 252 (2010)). "For over-detention claims, deliberate indifference is typically shown 'in those cases where prison officials were put on notice and then simply refused to investigate a prisoner's claim of sentence miscalculation.'" Id. (quoting *Moore v. Tartler*, 986 F.2d 682, 686 (3d Cir. 1993)).

Plaintiff's claim in this case is that his Eighth Amendment rights were violated when he was forced to serve 318 days in prison beyond his lawful maximum sentence, despite having placed Defendants on notice of the problem and sought their assistance. His theory is predicated upon two alleged errors relative to the computation of his maximum sentence in the 2012 case that require further discussion.

The first alleged error involves Plaintiff's claim that the Parole Board, through Defendant John Doe, unlawfully revoked all of the "good time" credit that he had accrued during the course of his first two parole periods commencing March 10, 2016 and September 2, 2016.  See Compl. ¶27.  Plaintiff maintains that, under the Pennsylvania Prison and Parole Code, he was entitled to receive credit against his 2012 sentence for all of the "good time" that he served while on parole, as well as the time he spent in custody at the parole violation center.  See Compl. ¶16 (citing 61 Pa. C.S. §6138(c)(2)("If the parolee is recommitted under this subsection [pertaining to technical parole violators], the parolee shall be given credit for the time served on parole in good standing but with no credit for delinquent time and may be reentered to serve the remainder of the original sentence or sentences"); *Penjuke v. Pa. Bd. of Prob. & Parole*, 203 A.3d 401, 414 (Pa. Commw. Ct. 2019) ("For a parolee who is recommitted as a [technical parole violator], that 'parolee shall be given credit for the time served on parole in good standing.'")).  On the other hand, once Plaintiff committed a new crime, the Parole Board had the discretion to determine whether he should receive any "good time" credit for that time period during which he was at liberty.  See Compl. ¶20 (citing 61 Pa. Cons. Stat. §6138 (2.1)).  Thus, under the statute, Plaintiff was entitled to receive credit for all the "good time" he served while at liberty, or at the parole violator center, unless the period of parole was terminated by the commission of a crime.  See Compl. ¶29. Plaintiff surmises that, when the responsible Parole Board member (designated in this lawsuit as Defendant "John Doe") determined that Plaintiff should be recommitted to serve 551 days of backtime, Defendant Doe based his calculation on the erroneous revocation of all "good time" credit that Plaintiff had previously accumulated while on parole, including not only the 201-day period from July 6, 2017 to January 23, 2018, but also Plaintiff's first two periods of parole, which had commenced on March 10, 2016 and September 2, 2016, respectively.  See Compl.

¶27.  In doing so, Plaintiff alleges, Defendant Doe violated 61 Pa. Cons. Stat. §6138(c)(2), because the Parole Board did not have the legal authority to revoke any "good time" beyond the most recent period of time that Plaintiff had been on parole (i.e., the 201-day period from July 6, 2017 to January 23, 2018). Compl. ¶¶28-29; *see also* Compl. ¶ 59 ("Per the plain language of 61 Pa.C.S. §6138, the Parole Board was only entitled to revoke the back-time that Mr. King had accumulated between July 6, 2017, and January 23, 2018, which was the 201 days that Mr. King was free on parole prior to commission of the crime which led to his parole revocation.") (citing *Penjuke v. Pa. Bd. of Prob. & Parole*, 203 A.3d 401, 420 (Pa. Commw. Ct. 2019) ("when the Board recommits a [convicted parole violator], it cannot revoke the credit that a parolee has been granted in a previous parole that resulted in recommitment as a [technical parole violator].")).

The second alleged error involves Plaintiff's claim that the DOC Defendants unlawfully failed to credit the time he served between May 15, 2018 and November 23, 2018.  *See* Compl. ¶33 (Plaintiff averring, [u]pon information and belief," that the new maximum sentence date of May 27, 2020, arose by failing to credit as "time served," the time Mr. King served from May 15, 2018, until after Judge Brabender's one to six month sentence expired, which would have been on November 23, 2018.").  Because Judge Brabender's sentence in the 2018 case was ordered to be served concurrent with "any other sentence," Plaintiff theorizes that he was concurrently serving time, both in the 2018 case and in the 2012 case, from May 15, 2018 to November 23, 2018.  He concludes that the DOC Defendants unlawfully treated his sentences in the two cases as consecutive, when they calculated the start of his 551-day recommitment period from November 23, 2018 rather than from May 15, 2018.  See Compl. ¶¶61-64.

Plaintiff concludes that, if his back time had been accurately computed and his sentence enforced in accordance with the law, his maximum sentence date in the 2012 case would have

14

started running on May 15, 2018 and terminated 201 days later, on December 2, 2018.  Compl. ¶30 and n. 3.  Because he was not released from prison until October 16, 2019, Plaintiff concludes that he was incarcerated for 318 days beyond his lawful maximum sentence.  He further claims that the Defendants were aware of, and deliberately indifferent to, these problems and the resulting risk that he was being confined unlawfully.

The DOC Defendants maintain that the allegations in the complaint fail to support a plausible Eighth Amendment violation under the three-part test articulated in *Wharton* and *Montanez*, *supra*.  They claim that they were never made aware of the Parole Board's alleged error in revoking "good time" credit from Plaintiff's first two parole periods and, therefore, Plaintiff cannot show that they were deliberately indifferent about it, nor can Plaintiff show that their conduct was related to any period of over-detention.  As to Plaintiff's complaint that his 2018 sentence should have been served concurrently with his backtime in the 2012 case, the DOC Defendants argue that they had no discretion under the law to administer Plaintiff's sentences in this fashion.

(i)

Taking these issues in reverse order, the Court finds that Defendants' latter argument has merit.  Under the Prison and Parole Code, once a parolee is recommitted as a convicted parole violator, the original sentence and any new sentences must be served consecutively rather than concurrently.  *See* 61 Pa. Cons. Stat.. § 6138(a)(5); *see also McGarvey v. Pa. Bd. of Prob. & Parole*, No. 1178 C.D. 2019, 2020 WL 4036780, at *2 (Pa. Commw. Ct. July 17, 2020).  Indeed, "[a] sentencing judge has no authority to order otherwise." *McGarvey*, 2020 WL 4036780, at *2 (quoting *Kerak v. Pa. Bd. of Prob. & Parole*, 153 A.3d 1134, 1138 (Pa. Cmwlth. Ct. 2016)

15

(internal quotation marks omitted), and citing *Bailey v. Pa. Bd. of Prob. & Parole*, 591 A.2d 778 (Pa. Cmwlth. Ct. 1991)).

Here, the complaint establishes that Plaintiff began serving his sentence in the 2018 case in May of 2018 and completed his maximum sentence on November 23, 2019.  Thereafter, he became eligible to serve his backtime in the 2012 case.  *See* 61 Pa. Cons. Stat. §6138(a)(5)(iii). The Court agrees that, irrespective of the language in Judge Brabender's sentencing order, the DOC Defendants could not have recalculated Plaintiff's sentence in the manner he requested without violating the law.  *See Lawrence v. Pa. Dep't of Corr.*, 941 A.2d 70, 73 (Pa. Cmwlth. Ct. 2007) (denying inmate's petition for mandamus relief on the basis that the trial court's order directing that inmate's new state sentence run concurrently with the backtime imposed on his original sentence violated the provisions of the Parole Act and was illegal).   Further, as Defendants note, running the two sentences concurrently would have apparently resulted in an unlawful application of double time credit.  *See* 42 Pa. Cons. Stat. §9760(4) (indicating that credit shall be given for time "that has not been credited against another sentence"); *Taglienti v. Dep't of Corr. of Commonwealth of Pa.,* 806 A.2d 988, 992 (Pa. Cmwlth. Ct. 2002) (noting that §9760(4) "makes it clear that time credit on a sentence can only be given when it has not already been credited against another sentence").

Because the DOC Defendants could not have lawfully recalculated Plaintiff's 2012 sentence in the manner Plaintiff requested, it follows that there was no unlawful confinement as a result of this particular sentencing issue, and Defendants could not have been deliberately indifferent to such a risk.  Plaintiff's complaint about the consecutive nature of his sentences thus fails, as a matter of law, to establish a plausible Eighth Amendment violation.

16

(ii)

With respect to the Parole Board's allegedly improper calculation of backtime, the DOC Defendants contend that there are no facts alleged to establish their knowledge of this problem or their awareness that Plaintiff might be subjected to unwarranted punishment as a result of it.  As to Stair, the Defendants posit that the only issue raised in the June 2019 letter written by Plaintiff's mother was the Parole Board's alleged failure to credit time that Plaintiff had spent in a parole violation center during the time period April 30, 2017 to July 8, 2017.  No specific mention was made in that letter of the Parole Board's improper revocation of "good time" credit. As to Stone, Bennage-Gregory and Welch, Defendants note that the only issue raised in Plaintiff's communications to prison staff concerned the DOC's alleged failure to run his backtime sentence concurrently with the sentence issued in his 2018 case.  If Defendants are correct that they were never placed on notice of the alleged backtime miscalculation, it follows that they could not have been deliberately indifferent about the problem or responsible for any illegal confinement that occurred as a result of the miscalculation.

Although it is a close call, the Court concludes that, when giving the Plaintiff the benefit of all favorable inferences from the complaint, he has minimally satisfied his pleading burden. As set forth in the complaint, all of the DOC Defendants are records administrators or records specialists, see Compl. ¶¶ 2-5, and as such, they presumably have the authority and the responsibility to address potential errors relative to the calculation and implementation of inmates' sentences.  All four Defendants had some involvement with Plaintiff's case:  Stair answered an inquiry about Plaintiff's sentence that was received by the DOC in June 2019; Stone apparently had contact with Plaintiff's mother at some point and also responded to Plaintiff's communications to prison staff in July 2019 and September 2019; Bennage-Gregory and Welch

17

were allegedly responsible for completing and/or approving the DC-16(E) form that calculated Plaintiff's maximum release date. See Compl. ¶¶40, 45, 49-50. Under a liberal reading of the complaint, Plaintiff alleges that, by virtue of their positions, their involvement with his case, and their access to the Parole Board's PBPP-39 form, the DOC Defendants were made aware of the Parole Board's improper revocation of Plaintiff's prior "good time" credit. See id. at ¶¶ 7, 55, 100, 101, 102. No action was taken by any of the Defendants concerning this issue, however. Plaintiff avers that, if the DOC Defendants had done so, he would have been released from prison prior to the date on which he was injured. Id. ¶103. Through discovery, the DOC Defendants may well be able to disprove any claims of deliberate indifference, or even their subjective knowledge of the allegedly unlawful backtime calculation. At this early stage of the litigation, however, Plaintiff need only plead "'enough facts to raise a reasonable expectation that discovery will reveal evidence" of the elements of his Eighth Amendment claim. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (quoting *Twombly*, 550 U.S. at 556). In this Court's view, Plaintiff has done so, and his Eighth Amendment claim can therefore proceed.

**IV**. **Conclusion**

Based upon the foregoing reasons, the DOC Defendants' motion to dismiss will be granted only insofar as Plaintiff's Eighth Amendment claim is predicated upon the Defendants' alleged failure to run his 2012 sentence concurrently with his 2018 sentence. In all other respects, the Defendants' motion to dismiss will be denied without prejudice to the Defendants' right to reassert their arguments herein at a later stage of these proceedings, if so warranted.

An appropriate Order follows.

Susan Paradise Baxter
United States District Judge

18